**AMERICAN STATE BANK OF PIERRE, and Fort Pierre Livestock Auction, Inc., Plaintiffs and Appellants,**

v.

**NORTHWEST SOUTH DAKOTA PRODUCTION CREDIT ASSOCIATION, Defendant and Appellee.**

**No. 15250.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided April 22, 1987.

John S. Lovald of Olinger, Srstka, Lovald, Robbennolt & Tieszen, P.C., Pierre, for plaintiffs and appellants.

James H. Wilson and Steven D. Rich of Wilson, Olson & Nash, P.C., Rapid City, for defendant and appellee.

KONENKAMP, Circuit Judge.

This is an appeal from a judgment declaring Northwest South Dakota Production Credit Association (PCA) a holder in due course of a check issued by Fort Pierre Livestock Auction, Inc. (Fort Pierre). We reverse.

On October 25, 1983, in payment for cattle sold at auction, Fort Pierre issued check number 19074 for $31,730.23 to its customer, Gene Hunt, naming as additional payees Cheyenne River Sioux Tribe Superior Court and PCA. Later Fort Pierre discovered it had miscounted the cattle and so it issued check 19331 dated October 31, 1983, for $36,343.95 to Hunt and the other payees. This check was meant to replace check 19074, but no notation to that effect was written on it. Fort Pierre did not ask Hunt to return check 19074, but attempted to issue a stop payment order. Its bank has no record of such order.

Neither check emerged for a year. Then on October 26, 1984, a PCA representative met with Hunt to arrange repayment of a huge delinquent loan. At this meeting Hunt agreed, among other things, to give PCA checks 19074 and 19331 in exchange for the forgiveness of his remaining debt. PCA did not know one check replaced the other or that Fort Pierre attempted to stop payment on check 19074.

After obtaining the checks, PCA's agent telephoned Fort Pierre's manager and told him "a couple of old [Hunt] checks were going to be deposited." The manager, in turn, called Fort Pierre's bank (American State Bank) and warned it to not accept the checks without full endorsements. The bank dutifully refused to accept one check because it had stamped, not handwritten, endorsements, but eventually, with the proper endorsements, both checks cleared through Fort Pierre's account.

Upon discovering in January 1985 that its bank had debited its account for both checks, Fort Pierre informed PCA that one check was meant to replace the other and demanded repayment for check 19074. Although PCA still had an opportunity to renegotiate its agreement with Hunt, it refused Fort Pierre's demand, choosing in-

stead to assert holder in due course (hereafter HDC) status. Fort Pierre sued to recover the amount of check 19074.

The trial court declared check 19074 invalid: it lacked consideration because check 19331 replaced it. Nonetheless, since PCA held the check as an HDC, the court ruled it was not subject to the defense of lack of consideration; PCA's telephone call to Fort Pierre was "commercially reasonable," nullifying PCA's notice the check was overdue.

To be an HDC under SDCL 57A–3–302, a party must take the instrument for value, in good faith, and without notice that it is overdue, or dishonored, or of any defense against or claim to it by any person. *Western Bank v. RaDEC Constr. Co.*, 382 N.W.2d 406 (S.D.1986). The fact that PCA was a payee does not disqualify it as an HDC. SDCL 57A–3–302(2). If a party fails to qualify as an HDC, then under SDCL 57A–3–306 he takes the instrument subject to:

(a) All valid claims to it on the part of any person; and

(b) All defenses of any party which would be available in an action on a simple contract; and

(c) The defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (§ 57A–3–408)....

The holder of an instrument has the burden of proving that he is an HDC when defenses or claims are shown. SDCL 57A–3–307. PCA took check 19074 for value and in good faith, but knew it was a year old; therefore, the only issue is whether PCA had notice check 19074 was overdue. Under SDCL 57A–3–304(3):

The purchaser has notice that an instrument is overdue if he has reason to know

(a) ...

(b) ...

(c) That he is taking a demand instrument after demand has been made or

more than a reasonable length of time after its issue. *A reasonable time for a check drawn and payable within the states and territories of the United States and District of Columbia is presumed to be thirty days.* (Emphasis added.)

This presumption is rebuttable (SDCL 57A–1–201–(31)) and we can envision instances where a delay of more than thirty days may be legitimate in the ordinary course of commerce,[1] but PCA offered no justification for a year's delay. At the trial, PCA's representative testified he obtained the year-old check when Hunt simply pulled it out of his briefcase and handed it to him.

PCA concedes that it knew the check was a year old, but argues its telephone call to Fort Pierre warning of its imminent deposit of old Hunt checks along with Fort Pierre's apparent acquiescence overcomes the presumed notice that check 19074 was overdue. Can notice cease to be effective once it occurs? The UCC drafters expressly avoided this question. UCC 1–201, Official Comment 25. Since the UCC does not determine the time and duration under which notice ceases to be effective, the matter is left for the courts to resolve. SDCL 57A–1–103; *Farmers Elev. Co. of Elk Point v. Lyle*, 90 S.D. 86, 238 N.W.2d 290 (1976).

When a holder has no notice of a defect in an instrument at the time it comes into his hands, later events will not alter his HDC status. SDCL 57A–3–304(6); *McCook County Nat'l Bank v. Compton*, 558 F.2d 871 (8th Cir.1977), *cert. denied* 434 U.S. 905, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). If knowledge acquired after the taking of an instrument is immaterial, then logically, a holder with notice that an instrument is overdue at the time it is taken should not be able to undo that notice except in the most extraordinary circumstances. *Cf. Graham v. White-Phillips Co.*, 296 U.S. 27, 56 S.Ct. 21, 80 L.Ed. 20 (1935); *First Nat'l Bank of Odessa v. Fazzari*, 10 N.Y.2d 394, 223 N.Y.S.2d 483, 179 N.E.2d 493 (1961) (forgotten notice). When PCA's

---

**1.** A bank may honor a customer's check more than six months old if it acts in good faith. SDCL 57A–4–404.

agent called Fort Pierre he made no mention of the check numbers, their amounts or dates, and Fort Pierre's manager made no comment which would lead the agent to believe the checks were not overdue, but only acknowledged the agent's intention to deposit them.

PCA's warning to Fort Pierre that it was about to deposit Hunt's "old checks" was insufficient to negate what was plainly visible on the check's face: a year-old date.[2] Since it had notice that check 19074 was overdue PCA was not a holder in due course. The trial court's finding to the contrary was clearly erroneous.

Reversed.

All the justices concur.

FOSHEIM, Retired J., participating.

KONENKAMP, Circuit Judge, for MORGAN, J., disqualified.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

---

**2.** "Doubtless the message on the face of an instrument that most often deprives the holder of holder in due course status is that the instrument is overdue." White and Summers, *Uniform Commercial Code* 565 (2d ed. 1980).